IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs November 20, 2019

## STATE OF TENNESSEE v. RICKY LAKINO COVINGTON

**Appeal from the Criminal Court for Hamilton County**
**No. 293267   Thomas C. Greenholtz, Judge**

_____

### No. E2019-00359-CCA-R3-CD

_____

Defendant, Ricky Lakino Covington, appeals from the trial court's revocation of his probation. Upon our review of the record, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and D. KELLY THOMAS, JJ., joined.

Michael L. Acuff, Chattanooga, Tennessee, for the appellant, Ricky Lakino Covington.

Herbert H. Slatery III, Attorney General and Reporter; Ruth Anne Thompson, Senior Assistant Attorney General; M. Neal Pinkston, District Attorney General; and Jason Demastus, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

Defendant was indicted by the Hamilton County Grand Jury for one count of aggravated burglary, one count of vandalism, and one count of public intoxication. On April 18, 2017, Defendant pleaded guilty to aggravated burglary and vandalism, and the trial court dismissed the charge of public intoxication. The trial court sentenced Defendant as a Range II offender to serve concurrent sentences of ten years for his aggravated burglary conviction and 11 months and 29 days for his vandalism conviction. Defendant was placed on supervised probation, and as a condition of probation, the trial court ordered that Defendant attend and satisfy the conditions of the Hamilton County Mental Health Court. On February 8, 2018, a capias was issued alleging that Defendant had violated the conditions of his probation by obtaining new charges. A violation report dated January 25, 2018, states that Defendant was arrested on January 22, 2018, on

charges of theft of property, possession of drug paraphernalia, criminal impersonation, public intoxication, and criminal trespassing. An addendum to the report states that Defendant also failed to report the new arrests to his probation officer and that Defendant engaged in threatening behavior.

### *Probation revocation hearing*

At the outset of the hearing, Sharon Abernathy, Defendant's mother, asked the trial court for permission to speak. Ms. Abernathy stated that she did not raise Defendant and that his adoptive parents were deceased. She stated that her family had a history of substance abuse. She stated that she had been sober for 29 years, and she asked the trial court to offer Defendant "some help" because she believed "the root of his problem [wa]s drugs and alcohol[.]"

Christina Barnes, a court liaison for the probation and parole office, testified that she had reviewed Defendant's records and violation reports. She testified that Defendant had been on probation since April, 2017. On February 6, 2018, a capias was issued against Defendant by the mental health court, alleging that Defendant had been charged with new offenses. On January 22, 2018, Defendant was charged with theft of property, criminal trespassing, criminal impersonation, public intoxication, and possession of drug paraphernalia. On February 23, 2018, Defendant entered guilty pleas to criminal impersonation and possession of drug paraphernalia and was sentenced to six months suspended on probation and 11 months and 29 days, also suspended on probation. Defendant also received new charges in May, 2018, which were pending in criminal court. Those charges included aggravated burglary, theft of property, assault, vandalism, and interference with 911 calls.

Ester Davenport, a navigator for the Hamilton County Mental Health Court, testified that her duties included acting as a "liaison" between the court and the program. She testified that Defendant entered the program on April 18, 2017, and he was removed from the program on February 6, 2018. A "Mental Health Court: Violation Summary" was admitted into evidence over the hearsay objection of defense counsel. The report is a timeline of events related to Defendant's participation in the program. Ms. Davenport testified that Defendant's participation in the program was terminated on February 6, 2018. She testified that she "believe[d] the new charges" against Defendant were the reason for his removal. She testified that Defendant requested to be reinstated to the mental health court in April, 2018, but his request was denied based on "his past performance in mental health court[,]" including Defendant's failures to appear and positive drug screens.

Sergeant Jane Phipps, of the Signal Mountain Police Department, testified that on May 14, 2018, she responded to a report of a burglary, assault, and vandalism. Sergeant Phipps spoke to the victim, Elizabeth Martin. As a result of the investigation, warrants were issued for the arrest of Defendant and Elsie Martin, the victim's daughter.

Elizabeth Martin testified that on May 14, 2018, she arrived at her house and saw Defendant putting a television into the backseat of her daughter's vehicle. Ms. Martin testified that she was "cussing and yelling" at Defendant to leave. She reached into her daughter's vehicle to try to remove the keys from the ignition, and Defendant "shoved [her] out of the way." Ms. Martin's daughter was with Defendant. Ms. Martin testified that neither Defendant, nor her daughter, had permission to be in her house. Ms. Martin's vehicle was blocking her daughter's vehicle, and Defendant began to "push" Ms. Martin's car out of the way using her daughter's vehicle. Defendant then drove through Ms. Martin's yard and damaged a tree.

Defendant testified that he had been diagnosed with bipolar disorder, post-traumatic stress disorder, mood disorder, and paranoid schizophrenia. Defendant testified that he suffered mental and physical abuse as a child. Defendant took prescription medications, but he also "self-medicat[ed]" with alcohol and drugs. Defendant testified that he "was doing okay for a while" in intensive outpatient treatment, but he "started back messing up again with drug screens." Defendant testified that incarceration "destroy[ed] [him] as a person mentally[.]" He testified that he had attempted suicide five months prior to the revocation hearing. Defendant asked the trial court for an opportunity to "get some help," testifying that he would stay on his medications, and the court would not "have a problem out of [him]." Defendant acknowledged that he had an extensive criminal history and "[m]ore than ten" prior probation violations. He testified that his "record is so long . . . that's the reason it's so easy [for him] to get in situations like this." He also acknowledged that he had failed drug screens and tested positive for a number of illegal substances while on probation.

At the conclusion of the hearing, the trial court found that the evidence was "clear" that Defendant had violated "a number" of conditions of probation, including misdemeanor convictions for possession of drug paraphernalia and criminal impersonation. The court found that Defendant's removal from the mental health court program constituted a violation of the conditions of probation. The court stated, "[m]ost importantly, though, is perhaps the allegations of the new criminal conduct involving Ms. Martin." The trial court found that the State proved the criminal conduct by a preponderance of the evidence. The court credited Ms. Martin's testimony and noted that Sergeant Phipps' testimony supported her testimony.

Considering the nature of the offense, the trial court concluded that Defendant's "continued felony criminal behavior while on probation for a felony [wa]s serious" and that "[i]t does tend to show that the beneficial aspects of probation [we]re no longer being served." The court also considered Defendant's previous violations of probation as evidence that Defendant was no longer benefitting from probation. The trial court concluded that Defendant was no longer an appropriate candidate for probation. The court ordered a full revocation of Defendant's probation and ordered Defendant's sentence into execution.

*Analysis*

On appeal, Defendant argues that the trial court abused its discretion by revoking his probation based upon evidence that "did not rise to the level of reliable hearsay" and that the trial court's full revocation of his probation was harsh in light of Defendant's mental health and substance abuse issues. The State asserts the trial court properly revoked Defendant's probation.

A trial court's authority to revoke a suspended sentence is derived from Tennessee Code Annotated section 40-35-310 (2019), which provides that the trial court possesses the power "at any time within the maximum time which was directed and ordered by the court for such suspension, . . . to revoke . . . such suspension" and cause the original judgment to be put into effect. A trial court may revoke probation upon its finding by a preponderance of the evidence that a violation of the conditions of probation has occurred. T.C.A. § 40-35-311(e) (2019). If a trial court revokes a defendant's probation, options include ordering confinement, ordering the sentence into execution as originally entered, returning the defendant to probation on modified conditions as appropriate, or extending the defendant's period of probation by up to two years. T.C.A. §§ 40-35-308(a), (c), -310 (2019); *see State v. Hunter*, 1 S.W.3d 643, 648 (Tenn. 1999).

The judgment of the trial court in a revocation proceeding will not be disturbed on appeal unless there has been an abuse of discretion. *See State v. Shaffer*, 45 S.W.3d 553, 554 (Tenn. 2001); *State v. Smith*, 909 S.W.2d 471, 473 (Tenn. Crim. App. 1995). In order for this court to find an abuse of discretion, "there must be no substantial evidence to support the conclusion of the trial court that a violation of the conditions of probation has occurred." *Shaffer*, 45 S.W.3d at 554. Further, a finding of abuse of discretion "'reflects that the trial court's logic and reasoning was improper when viewed in light of the factual circumstances and relevant legal principles involved in a particular case.'" *Id.* at 555 (quoting *State v. Moore*, 6 S.W.3d 235, 242 (Tenn. 1999)).

Here, the trial court made extensive findings and conclusions in its ruling. The court recognized that "a trial court may not rely on the mere fact of an arrest or an

indictment to revoke a defendant's probation." *State v. John Edward Winn, Jr.*, No. M2009-00094-CCA-R3-CD, 2010 WL 2516855, at *2 (Tenn. Crim. App. June 22, 2010) (citing *State v. Harkins*, 811 S.W.2d 79, 83 n.3 (Tenn. 1991)), *no perm. app. filed*. Instead, "the State must show by a preponderance of the evidence that the defendant violated the law." *Id*. at *3 (citation omitted). The trial court accredited the testimony of Sergeant Phipps and Ms. Martin and concluded that Defendant committed "a serious felony offense," which was established "not only by a preponderance of the evidence, . . . [but] by clear and convincing evidence at least."

After the trial court found that Defendant had violated the terms of his probation, it retained discretionary authority, pursuant to Tennessee Code Annotated section 40-35-310(b), to order Defendant to serve his sentence in incarceration. The determination of the proper consequence of a probation violation embodies a separate exercise of discretion. *Hunter*, 1 S.W.3d at 647. Case law establishes that "an accused, already on probation, is not entitled to a second grant of probation or another form of alternative sentencing." *State v. Jeffrey A. Warfield*, No. 01C01-9711-CC-00504, 1999 WL 61065, at *2 (Tenn. Crim. App., at Nashville, Feb. 10, 1999), *perm. app. denied* (Tenn. June 28, 1999).

We conclude that the trial court did not abuse its discretion when it revoked Defendant's probation and ordered Defendant's original sentence into execution. The trial court found that Defendant had committed a felony while on probation. Defendant admitted that he had previously violated probation. He admitted to using controlled substances while on probation. The trial court found that Defendant's prior attempts at community-based mental health treatments were unsuccessful. The trial court noted that Defendant's "continued criminal conduct" while on probation indicated that "the beneficial aspects of probation [we]re no longer being served." Defendant is not entitled to relief.

Defendant also contends that the trial court erred by admitting into evidence the violation summary report presented by Ms. Davenport. The State responds that the trial court did not rely on the report or Ms. Davenport's testimony in revoking Defendant's probation. At the revocation hearing, defense counsel objected to Ms. Davenport's testimony as hearsay. The trial court found that the report was "analogous to a probation violation report," which the trial court noted has been held to be reliable hearsay. Defense counsel later renewed his objection, arguing that the violations listed in Ms. Davenport's report were taken from other sources. The State asserted that the report was a "collaborative record[] as part of the mental health court team[,]" and that it was used "to evaluate and address what appear to be continued violations and efforts to help [Defendant] get back on the program without violating him, frankly." The trial court indicated its agreement with defense counsel and stated that he raised "kind of an

interesting issue." The court noted that the report "might be relevant in terms of [Defendant]'s overall performance inside of the mental health court program," but the court stated that it was not sure yet how it was relevant to the issue of whether Defendant violated probation.

In any event, the record is clear that the court did not rely on the report in revoking Defendant's probation. Rather, the trial court primarily relied on the fact that Defendant had committed a felony while on probation. Because "[o]nly one basis for revocation is necessary," any error by the trial court in relying upon hearsay evidence regarding Defendant's discharge from the mental health court program would not be fatal to its decision to revoke his probation. *See State v. Alonzo Chatman*, No. E2000-03123-CCA-R3-CD, 2001 WL 1173895, at *2 (Tenn. Crim. App. Oct. 5, 2001), *no perm. app. filed*. Defendant is not entitled to relief.

CONCLUSION

Based on the foregoing, we affirm the judgment of the trial court.

_____
THOMAS T. WOODALL, JUDGE

- 6 -